

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable T. M. Trimble, First Assistant
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:

Opinion Number O-5405
Re: Term of employment and
dismissal of Rural School
Supervisors.

We have received your letter of July 15, 1943, submitting the following three questions contained in a letter from Honorable Victor E. Wattner, State Representative, addressed to you:

"(1)  For how long may a Rural School Supervisor be employed?

"(2)  Does the County School Board have the authority to abolish the position or dismiss the Rural School Supervisor without the consent of the County Superintendent?

"(3)  Does the County Superintendent have the authority to abolish the position of Rural School Supervisor or to dismiss the Rural School Supervisor without the consent of the County School Board?"

Article 2700.1, Section 2, Revised Civil Statutes, 1925, provides as follows:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable T. M. Trimble, page #2

"The County Superintendent of Public Instruction may, with the approval of the County Board of Education, employ one or more school supervisors to assist in planning, outlining, and supervising the work of the Public Free Schools in the county which is under the supervision of the County Superintendent of Public Instruction. Said supervisor or supervisors shall at all times work under the supervision and direction of the County Superintendent of Public Instruction, as other assistants are required to do, and must have evidence of proficiency in rural school supervision and must be the holder of at least a Bachelor of Science Degree or higher. Such supervisor or supervisors may receive a salary of not to exceed Two Thousand Dollars ($2,000) per annum, to be paid out of the same funds and in the same manner as that of the County Superintendent of Public Instruction and other assistants."

It is quite clear from said quoted section that the position of Rural School Supervisor, or school supervisor, as set forth in said section, is one of public employment and not of public office. We quote from the case of Robertson v. Ellis County, (Civ. App.) 84 S. W. 1097, not appealed:

"There is quite a material difference between a public office and a public employment. As said by Chief Justice Marshall, 'Although an office is an employment, it does not follow that every employment is an office.' Mr. Mechem in his work on Public Officers, says: 'The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches for the time being, to be exercised for the public benefit. Unless the powers

Honorable T. M. Trimble, page #3

conferred are of this nature, the individual
is not a public officer.' "

Said supervisor has been delegated no sovereign func-
tions of government to be exercised by him for the public
benefit. He is only an employee "to assist in planning, out-
lining and supervising the work of the Public Free Schools in
the county which is under the supervision of the County Super-
intendent of Public Instruction. Said supervisor or supervi-
sors shall at all times work under the supervision and direction
of the County Superintendent of Public Instruction, as other as-
sistants are required to do." (Underscoring ours.) The term
of employment is not fixed by law, is not for any particular
duration of time, is not within any constitutional provision,
and is therefore "coextensive in duration with the tenure of
the officer appointing him, and, unless sooner removed, he holds
until the expiration of the officer's term, and ceases to hold
at that time unless reappointed." 34 Tex. Jur., p. 604.

"Since the Constitution does not provide for
continuity of terms of office, each term legally
is an entity, separate and distinct from all other
terms of the same office." 34 Tex. Jur., p. 367.

"Where the term of office is not fixed by law,
the officer is regarded as holding at the will of
the appointing power, even though the appointing
power attempts to fix a definite term; and an offi-
cer removable at the pleasure of the appointing
power, has, in the strict meaning of the word, no
'term' of office. A constitutional provision that
terms of office not fixed by the Constitution shall
not exceed a specified time does not enlarge the
duration of an office held at the pleasure of the
executive." (Underscoring ours.) 46 C.J. 964,
par. 98.

In the case of Johnson v. Cavanah, 21 Ky. Law Rep. 1246,
54 S. W. 853, the manager of the workhouse, who was appointed by
the County Court for two years, beginning Jan. 1, 1898, was re-
moved by the same court on Jan. 4, 1898. The court held that he

Honorable T. M. Trimble, page #4

could be removed without notice or cause, as he was the mere agent of the court and subject to its orders, no qualifications or term for the appointee having been prescribed by statute.

In the case of Johnson v. Ginn et al. (Ky.) 49 S. W. 470, it was held that the County Superintendent, under a statute authorizing him to appoint examiners and which fixes no definite term of office for such appointees, may remove such examiners without notice or assigning any cause, although the County Superintendent had, in said case, appointed the examiners removed from a term of one year, citing Keenan v. Perry, 24 Texas 253, and numerous other authorities which support the following general rule: "Where the power of appointment is conferred in general terms and without restriction, the power of removal in the discretion and at the will of the appointing power, is implied, and always exists unless restrained and limited by some provision of law."

Where the law fixes no duration of office or employment, and no provision is made for removal of an incumbent, the appointive power necessarily carries with it the removal power. In such a case the incumbent holds at the pleasure of the appointing officer and may be removed by him at any time. 34 Tex. Jur., p. 594. In the absence of any constitutional or statutory provision, the power of removal is incident to the power of appointment. Keenan v. Perry, 24 Tex., 237 et seq.; Neeper v. Stewart (Civ. App.) 66 S. W. (2d) 812, Error Refused.

"* * * the power of the federal executive to remove officers, appointed with concurrence of the Senate, was much discussed. The great question was, whether the power of removal resided in the President alone, or with the concurrence of the Senate, both constituting the appointing power. The power of the President and Senate, jointly, to remove, where the tenure of office was not fixed by the Constitution, was admitted, and the principle fully recognized, that the power of removal was incident to the power of appointment." (Underscoring ours.) Keenan v. Perry, supra.

Honorable T. M. Trimble, page #5

We must, therefore, determine who employs the School Supervisor, in order to determine who may remove such employee.

The intent of the Legislature controls the language used by it, and in construing a statute, courts are not necessarily confined to the literal meaning of the words used. 39 Tex. Jur., pp. 180-181. One word is often used to express different ideas. Therefore, in every case, the particular meaning depends upon a nd must be determined by the context and subject matter, and the intent of the Legislature. 39 Tex. Jur., p. 196, par. 104.

In the case of Oden v. Gates, 119 Tex. 76, 24 S. W. (2d) 381, the Court, in construing the meaning of the word "due", as used in the statute then under consideration, stated that it had a double meaning, was used on different occasions to express distinct ideas, and its meaning must necessarily depend upon the context and evident purpose intended.

In 39 Tex. Jur., p. 209, par. 113, it is stated that "Another fundamental rule requires that a statute be construed as a whole and that all of its parts be harmonized if possible." Therefore, an act must be viewed in its entirety. Each part of a statute must be considered in connection with every other part. The legislative intent must be determined from a general view of the whole enactment. Ry. Co. vs. Mahaffey, 105 Tex. 394, 150 S. W. 881; Spears vs. City of San Antonio, 110 Tex. 618, 223 S.W. 166; 39 Tex. Jur., p. 168, par. 90.

"In a proper case, the * * * intent may be inferred from the fact that an act does not contain a certain provision." 39 Tex. Jur., p. 178, par. 93.

"In cases of ambiguity, the intent and spirit of the act will prevail over its letter. * * * The intention of the Legislature controls the language used by it, and in construing a statute

27

the Court is not necessarily confined to the
literal meaning of the words used, especially in
respect of isolated or particular provisions. In
such cases a construction is sometimes given con-
trary to the letter of the law." 39 Tex. Jur.,
pp. 180-181, par. 95.

As used in Article 2700.1, the word "approval" must
be considered in two connections - first, with reference to
ratification and second, with reference to authorization or
consent.

It will be noticed that in Section 1 of said article
the following language is used: "The County Superintendent,
with the approval and the confirmation of the County Board
of Education, may employ a competent assistant," etc. In
Section 2 thereof, it is provided that "The County Superin-
tendent of Public Instruction may, with the approval of the
County Board of Education, employ one or more school super-
visors," etc.

In Words and Phrases, Vol. 3, p. 830, it is stated
that "The term 'approval' is susceptible of different mean-
ings, dependent upon the subject matter and context concern-
ing which the term is employed and the object and purpose to
be subserved or accomplished. Ordinarily, the term in its
most obvious meaning, is to commend, confirm, ratify, sanction,
or to consent to some act or thing done by another."

It appears, therefore, that the Legislature, in not
requiring the confirmation of the County Board, but only its
approval, in connection with the employment of one or more
school supervisors, while requiring both approval and confirm-
ation of said Board in the employment of a competent assistant,
used the word "approval" in Section 2 in the light of consent
or authorization and not ratification. Otherwise, why did it
use the words "with the approval and the confirmation" in Sec-
tion 1 and omit the words "and the confirmation" in Section 2?

Honorable T. M. Trimble, page #7

We can perceive no sound reason for this omission if the Leg-
islature intended for the employment of such supervisors to be
confirmed by the County Board. In view of this omission in
Section 2, and in the light of the foregoing rules of construc-
tion, it is clear to our minds that the employment of school
supervisors is vested in the County School Superintendent,
after such employment has been authorized by the "approval" of
the County Board of Education.

We think this conclusion is further sustained by those
provisions in Section 2 which enumerate the duties of said school
supervisors and which pertain to their supervision. They are to
"assist in planning, outlining, and supervising the work * * *
which is under the supervision of the County Superintendent" and
"shall at all times work under the supervision and direction of
the County Superintendent * * * as other assistants are required
to do." This is further evidence to our minds that the Legis-
lature intended that such supervisors should be employees of the
County Superintendent and not of any other public officials.

The case of Neeper v. Stewart, supra, is very much in
point. The County Board of Trustees, acting under the provisions
of Article 2700, Revised Civil Statutes, elected Mrs. Neeper as
assistant county superintendent after she had been selected and
nominated by Mr. Stewart, the county superintendent. Her salary
of $100.00 per month was paid from January 1, 1931, to April 1,
1932. On April 2, 1932, Mrs. Neeper was notified by Mr. Stewart
that her services were no longer needed and that she was dis-
charged. She insisted that he had no right to discharge her.
The County Board of Trustees thereafter passed an order allowing
her salary through July, 1932, and which order instructed the
County Superintendent to approve warrants in payment of said
salary. It also provided that her services be discontinued at
the end of said period. Thereafter the county superintendent
refused to approve said warrants. A writ of mandamus was denied
in the trial court and its judgment was affirmed on appeal. The
following quotation from said case is very significant:

"The statute should not be construed as deny-
ing to the superintendent the power to employ and

Honorable T. M. Trimble, page #8

discharge his assistant, unless that construction is <u>required</u> by its language, for, lacking in that <u>power</u>, he has no means of securing obedience to his instructions." (Underscoring ours.)

Therefore, in answer to the first question propounded, you are advised that a rural school supervisor cannot be employed <u>for any period of time</u>. He only holds his position at the pleasure of the appointing officer, not to exceed his current term of office, and may be removed by him at any time.

The second question is answered in the negative.

In answer to the third question, you are advised that the County Superintendent does have the authority to dismiss the Rural School Supervisor without the consent of the County School Board, but he cannot "abolish" the position of Rural School Supervisor. The position was created by the Legislature, and can be abolished by no lesser power. Weaver v. Commissioners' Court of Nacogdoches County, (Com. App.) 146 S. W. (2d) 170. Adopted by Supreme Court.

APPROVED SEP 2, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

LHF-s

OK
C.C.R.

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE

Very truly yours

ATTORNEY GENERAL OF TEXAS

By L. H. Flewellen
Assistant